## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Newport News Division

| | | |
|---|---|---|
| JACQUELINE BOONE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:11-cv-00164 |
| | ) | |
| ENCORE CAPITAL GROUP, INC., | ) | |
| MIDLAND FUNDING LLC, and | ) | |
| MIDLAND CREDIT MANAGEMENT, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO SEVER

Defendants, Encore Capital Group, Inc. ("Encore"), Midland Funding, LLC ("Midland Funding"), and Midland Credit Management, Inc. ("Midland Credit Management") (collectively, the "Defendants"), by counsel, and pursuant to Fed. R. Civ. P. 21, submit the following memorandum in support of their Motion to Sever.

### INTRODUCTION

This action involves 167 individual Plaintiffs and fifty-three counts alleged in the Complaint. All told, 837 claims have been pled against Defendants. Although Plaintiffs' claims are all asserted against the same Defendants, any substantive overlap ends there. By their nature (*e.g.*, allegations regarding specific telephone calls), Plaintiffs' claims are based on the particular facts of their individual debt collection efforts and not subject to mass adjudication. To establish even a *prima facie* case of liability on any claim, *each* Plaintiff will need to put on evidence regarding, *inter alia*, the documents received from Defendants; the amount and validity of the debt at issue; the contents of the documents filed in Virginia state court; the outcome of any state court collection proceeding; the time, date, place, and content of each instance of any alleged

harassing telephone conduct or other allegedly violative behavior; and the nature of damages claimed, both actual and statutory.

Each of Plaintiffs' claims will also be subject to factually-unique and varying defenses. To propose but one example, Defendants believe that the great majority of the dated allegations against them will be barred by the one-year statute of limitations under the Fair Debt Collection Practices Act. *See* 15 U.S.C. § 1692k(d) (establishing a one-year period of limitation from date of the violation). The date of each instance of challenged conduct will need to be discerned to determine the applicability of this defense. Also, the logistical implications alone of a joint trial for all 167 Plaintiffs (*e.g.*, 167 or more business days of evidence) would be truly overwhelming for the Court, the jury, and all parties involved on any number of levels. Fundamentally, the individualized inquiries and 167 "mini-trials" that would be required to resolve Plaintiffs' claims in one civil action present a paradigm example of where severance is necessary.

An analogous decision out of the Southern District of Florida (involving "only" thirty-seven plaintiffs) neatly encapsulates the problems with the 167 Plaintiff proposed joint action in this matter:

> In determining whether to exercise its discretion to allow joinder of numerous diverse Plaintiffs, with numerous different and individualized claims, as here, the Court has considered the letter of Rule 20(a) and the underlying policy considerations justifying joinder under that rule. Those are the promotion of efficiency, convenience, consistency and fundamental fairness. In doing so, the Court has determined that these policy considerations would be undermined, rather than promoted, by permitting this action to proceed as a 37-plaintiff, multiple count, mega case involving virtually hundreds of different variations of claims arising out of eight different investment vehicles associated with four different real estate projects. It is the Court's finding, after considering all of the arguments presented by the parties, that litigating what are in reality 37 separate lawsuits in one proceeding, while initially and facially seemingly appealing in terms of efficiency and convenience would, in fact, be very inefficient. Moreover, such a presentation to a jury would lead to jury confusion and prejudice to Defendants.

*Ravin v. Hockman*, 2007 U.S. Dist. LEXIS 33, at *15-16 (S.D. Fla. Jan. 3, 2007). To ensure a proceeding that is fair and efficient for all parties, Defendants' Motion to Sever must be granted, with the Court dismissing the claims of all but one of the Plaintiffs without prejudice.

## STATEMENT OF ALLEGATIONS[1]

Fifty-three counts have been pled against the Defendants. Two of these fifty-three counts purport to join all of the Plaintiffs under the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Counts One and Eight), and two other counts purport to assert FDCPA claims for 137 of the Plaintiffs (Counts Two and Five). Count Three is pled on behalf of twenty-one Plaintiffs, Count Four on behalf of forty-one Plaintiffs, Count Six on behalf of 101 Plaintiffs, and Count Seven on behalf of thirteen Plaintiffs. Of the remaining forty-five counts, forty-three are claims by individual Plaintiffs under various provisions of the FDCPA. The remaining two counts are brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, with five Plaintiffs asserting claims under each of those counts. A brief description of Plaintiffs' claims is as follows:

- Count One - 15 U.S.C. § 1692e: Count One is pled on behalf of all Plaintiffs. Count One vaguely alleges that Defendants used "false, deceptive and misleading representations or means in connection with the collection of the alleged debt from the Plaintiffs."

- Count Two - 15 U.S.C. § 1692e(2): Count Two is pled on behalf of 137 Plaintiffs. Count Two alleges that Defendants "falsely represented the character, amount and/or legal status of the alleged debts in the 'Summary Screens' mailed to the Plaintiffs."

- Count Three - 15 U.S.C. § 1692e(10): Count Three is pled on behalf of twenty-one Plaintiffs. Count Three alleges that Defendants "used false or deceptive means in an attempt to collect a debt by . . . attaching generic cardholder agreements or other account documents to the 'Warrant in Debt'

---

[1] The Statement of Allegations section is based on the allegations contained in the Complaint. Defendants deny the allegations in the Complaint, but, for the limited purpose of this Motion and Memorandum, they are accepted as true.

and then claiming that these were the actual agreements or account documents for that specific account."

- Count Four - 15 U.S.C. § 1692e(10):  Count Four is pled on behalf of forty-one Plaintiffs.  Count Four alleges that all Defendants used false or deceptive means to collect a debt by attaching "invoices or other documents to the Personal Knowledge Affidavit."

- Count Five - 15 U.S.C. § 1692e(11):  Count Five is pled on behalf of the same 137 Plaintiffs as Count Two.  In Count Five, Plaintiffs claim that Defendants violated § 1692e(11) by failing to disclose on the Summary Screens that the "Defendants were debt collectors, that they were attempting to collect a debt, and/or that any information obtained would be used for that purpose."

- Count Six - 15 U.S.C. § 1692e(11):  Count Six is pled on behalf of one hundred and one Plaintiffs.  This Count alleges "at the time that the collection lawsuit was filed," Defendants sent to Plaintiffs a "Personal Knowledge Affidavit," which "failed to inform the Plaintiffs that the Defendants were debt collectors, that they were attempting to collect a debt, and/or that any information obtained would be used for that purpose."

- Count Seven - 15 U.S.C. § 1692e(11):  Count Seven is pled on behalf of thirteen Plaintiffs.  Count Seven alleges that "at the time that the collection lawsuit was filed," Defendants sent to Plaintiffs a "MCM Statement," which failed to inform Plaintiffs that it was prepared by a debt collector.

- Count Eight - 15 U.S.C. § 1692g(a):  Count Eight is pled on behalf of all Plaintiffs.  It alleges that Defendants "failed to timely send the Plaintiffs a written notice that complied with the requirements of § 1692g(a) and which informed them of their right to request verification of the debt."

- Counts Nine through Fifty-One:  Each such count is pled on behalf of an individual Plaintiff.  These claims assert the following violations of the FDCPA, which relate to Defendants' alleged numerous instances of telephone harassment and use of "unfair means" to collect a debt, both with respect to the individual Plaintiffs and unnamed third parties: 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692f, 1692b(2), 1692c(a)(3), 1692c(b), 1692c(a)(3).

- Counts Fifty-Two and Fifty-Three – 42 U.S.C. § 227(b)(1)(B):  Counts Fifty-Two and Fifty-Three are each asserted on behalf of five Plaintiffs.  These Counts allege that Defendants violated the TCPA through the use of an automatic telephone dialing system or artificial voice technology to call Plaintiffs.

(Compl., at ¶¶ 77-298).  All Plaintiffs request actual and statutory damages, attorney's fees, and costs.  *See id.*

### STANDARD OF REVIEW

The propriety of joinder of multiple plaintiffs in a single lawsuit is governed by Fed. R. Civ. P. 20(a).  Under Rule 20(a), joinder is only permitted when claims are asserted "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any questions of law or fact common to all those persons will arise in the action."  *Id.*  Both requirements must be fulfilled to satisfy the Rule.  *E.g.*, *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

Moreover, even if both requirements of Rule 20 are satisfied, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness."  *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (citations omitted); *accord United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) (joinder is encouraged only to the extent "consistent with fairness to the parties").  If a court concludes that joinder is inappropriate under Rule 20 it has broad discretion under Fed. R. Civ. P. 21 to sever parties or claims.  *E.g.*, *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988) ("The decision whether to grant a severance motion is committed to the sound discretion of the trial court.").

### ARGUMENT

**I.     The highly-individualized nature of the claims of all 167 Plaintiffs, which discredits any assertion of "commonality" under Rule 20(a), requires the severance of the action under Rule 21.**

Of the fifty-three counts in the Complaint, forty-three are pled on behalf of individual Plaintiffs regarding collection activity that is admittedly unique to their accounts, *e.g.*, claims that Defendants placed harassing phone calls to the individual plaintiff, claims that Defendants placed calls to the individual Plaintiff's place of employment after being notified that such calls were prohibited, or claims that Defendants placed calls to a third-party without prior permission, etc.  (Compl., at ¶¶ 119-290).  Two additional counts are pled on behalf of a small subset of ten

plaintiffs alleging other types of harassing telephone conduct that is also unique to them.  (*Id.* at ¶¶ 291-298).  The remaining eight counts, which are pled on behalf of widely-varying groups of Plaintiffs, concern allegations of false, deceptive and misleading representations made by Defendants toward each individual Plaintiff, or claims regarding documents and/or court pleadings that were allegedly mailed to each Plaintiff with respect to their individual state court collection actions.  (*Id.* at ¶¶ 77-118).  Relative to each Plaintiff, none of these claims arise out of the same "transaction or occurrence" with "common" questions of law or fact, and none are appropriate for mass resolution under Rule 20.

Under Rule 20, a common defendant in and of itself is insufficient to satisfy the same transaction or occurrence requirement.  *See, e.g.*, *Saval v. BL Ltd.*, 710 F.2d 1027, 1031-32 (4th Cir. 1982).  "Similar claims" alone also do not generate commonality under Rule 20.  *See, e.g., Lover v. District of Columbia*, 248 F.R.D. 319, 320 (D.D.C. 2008) (joinder inappropriate even though each plaintiff asserted a § 1983 *Monell* claim); *accord Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) ("[T]he mere fact that . . . claims arise under the same general law does not necessarily establish a common question of law or fact" under Rule 20(a)).  And, even if the legal theory is the same, there is a "complete lack of common questions of fact or law" when the allegations are based "wholly upon the separate acts of the defendant with respect to each plaintiff."  *Smith v. North American Rockwell Corp.*, 50 F.R.D. 515, 524 (N.D. Okla. 1970).

Thus, it is settled law that "[j]oinder is not appropriate where . . . the claims [of plaintiffs] involve their own 'peculiar circumstances.'"  *Cunningham v. Flowers*, 218 F.R.D. 453, 454 (D. Md. 2003) (denying joinder of claims alleging First-Amendment violations) (quoting *Randleel v. Pizza Hut of Am.*, 182 F.R.D. 542, 545 (N.D. Ill. 1998); *see also Coalition for a Sustainable Delta*, 2009 U.S. Dist. LEXIS 111743, at *7 (E.D. Cal. Nov. 17, 2009) ("Where claims require

significant 'individualized attention,' they do not involve common questions of law or fact."). In such matters, "each plaintiff's situation would have to be considered in detail . . . [and] the determination of facts and the scope of testimony with respect to one plaintiff would have little relevance to issues raised by another plaintiff." *Cunningham*, 218 F.R.D. at 455 (citing *Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446, 448 (N.D. Cal. 1975)). Thus, permitting joinder in such cases would not only contravene the plain language of Rule 20, it would run afoul of the purpose of that rule "to promote trial convenience and expedite the final determination of disputes," *Saval*, 710 F.2d at 1031, because, as a practical matter, such cases would present multiple "trials confusingly squeezed into one." *Cunningham*, 218 F.R.D. at 455.

Accordingly, federal courts, including those within the Fourth Circuit, have consistently severed or denied joinder of claims requiring individualized factual determinations to assess liability, even when some factual overlap exists among the plaintiffs with respect to the named defendants. For instance, in *Raw Films, Ltd. v. Doe*, 2011 U.S. Dist. LEXIS 114996 (E.D. Va. Oct. 5, 2011), the court severed a case involving thirty-seven defendants, holding:

> Merely committing the same type of violation in the same way does not link defendants together for purposes of joinder . . . . The mere allegation that the defendants have used the same peer-to-peer network to copy and reproduce the Work—which occurred on different days and times over a span of three months— is insufficient to meet the standards of joinder set forth in Rule 20.

*Id.* at *3-4 (internal citations omitted); *see also, e.g.*, *Saval*, 710 F.2d at 1031-32 (affirming decision that allegations of fraud and breach of federal warranties concerning similar problems with automobiles failed to satisfy transactional test under Rule 20(a)); *Hard Drive Prods. v. Does*, 2011 U.S. Dist. LEXIS 119333, at *6-7 (E.D. Va. Oct. 17, 2011) ("Plaintiff relies on this 'swarm' theory to claim that the Doe Defendants acted in concert through a series of transactions to commit the infringement, giving rise to proper joinder. The Court, however, disagrees with this conception of proper joinder under the Federal Rules of Civil Procedure.").

The same analysis has been mirrored by courts nationwide. *Martinez v. Haleas*, 2010 U.S. Dist. LEXIS 31498, at *8-9 (N.D. Ill. Mar. 30, 2010) ("While there are similarities between each of the arrests in question -- Haleas was the arresting officer in each and each arrest was for DUI -- all of the arrests took place on different dates, in different locations, and under distinct circumstances during a two year period."); *Funtanilla v. Tristan*, 2010 U.S. Dist. LEXIS 30466, a*15 (E.D. Cal. Mar. 29, 2010) ("Each of Plaintiff's seven claims allege unrelated actions, and Plaintiff's alleged injuries resulting from each action are distinctly different.  The fact that all of the defendants share an employer and place of employment does not establish any common question of fact.  Each of Plaintiff's claims will require its own review of entirely separate events."); *Goldman v. Kenworthy*, 2011 U.S. Dist. LEXIS 73442, at *3 n.1 (E.D.N.C. July 6, 2011) (denying joinder, and holding that "[b]ecause many of the prospective plaintiffs are incarcerated at different institutions, the court anticipates that the facts and circumstances surrounding their individual claims will vary."); *Woltz v. Bailey*, 2009 U.S. Dist. LEXIS 73652, at *3 (W.D.N.C. Aug. 11, 2009) ("No one transaction, occurrence, or series of transactions or occurrences is common to all Defendants.  Each individual alleges separate and distinct medical issues.  Moreover, the issue of actual injury will be separate and distinct for each plaintiff.  As such, they may not join together as plaintiffs in a single action and the Complaint is dismissed."); *Jenkins v. City of Portsmouth*, 2006 U.S. Dist. LEXIS 85482, at *13 (E.D. Va. Nov. 27, 2006) (despite the defendants' "membership and/or status as City employees," there was insufficient factual overlap to allow joinder); *In re Rezulin Prods. Liab. Litig.*, 168 F Supp.2d 136, 144 (S.D.N.Y. 2001) (finding misjoinder because plaintiffs, who ingested the same drug, had different exposures to the drug, different injuries, and different medical histories).

Plaintiffs' claims against the Defendants are necessarily individualized, bearing only superficial similarities insufficient to ground joinder. The Complaint sets forth facts from which the Court can readily discern that each Plaintiff is challenging *separate* encounters with the Defendants based on individual debts. An illustration of the proposed trial process with respect to one Plaintiff, Saleed Alahmed ("Alahmed"), substantiates this contention. In addition to the allegations regarding Defendants' debt collection practices concerning the mailing and filing of documents, Plaintiff's counsel pleads the following factual allegations with respect to Alahmed:

> Defendants placed numerous calls to Plaintiff Alahmed's family members. On each such occasion, Defendants identified themselves as debt collectors and discussed the debt with these third parties, causing substantial damage to Plaintiff Alahmed. Defendants also placed several calls to Alahmed's place of employment regarding the debt. On each such occasion, Alahmed informed the caller that he was not allowed to receive personal calls at work and asked the callers not to call him at work again. Despite Alahmed's repeated requests that the Defendants should stop calling him at work, Defendants continued to make phone calls to Alahmed's place of employment regarding his debt, causing him to experience substantial damages.

(Compl., at ¶¶ 48-51). On the basis of these allegations, Alahmed pleads the following causes of action against the Defendants under the FDCPA:

> **Count One**: 15 U.S.C. § 1692e (Defendants making "false, deceptive and misleading representations" regarding his debt);
>
> **Count Two**: 15 U.S.C. § 1692e(2) (Defendants falsely representing "the character, amount and/or legal status of the alleged debts in the 'Summary Screens'");
>
> **Count Five**: 15 U.S.C. § 1692e(11) (Defendants' failure to identify themselves as a debt collector on the "Summary Screen" mailed to Alahmed);
>
> **Count Six**: 15 U.S.C. § 1692e(11) (Defendants' failure to identify themselves as debt collectors on the "Personal Knowledge Affidavit" mailed to Alahmed);
>
> **Count Eight**: 15 U.S.C. § 1692g(a) (Defendants' failure to send Alahmed a written notice informing him of right to request verification of the debt);
>
> **Count Twelve**: 15 U.S.C. § 1692b(2) (Defendants' "repeated communications with third parties that Alahmed owed a debt");

**Count Thirteen**: 15 U.S.C. § 1692c(a)(3) (Defendants' "repeated, unauthorized communications with Alahmed at his place of employment following his repeated notification to the Defendants that his employer prohibited such calls");

**Count Fourteen**: 15 U.S.C. § 1692c(b) (Defendants' "repeated, unauthorized communications with a third-party without prior consent of Alahmed and without express permission of a court");

**Count Fifteen**: 15 U.S.C. § 1692d (Defendants illegally "abusing and harassing Alahmed" by repeated calls to his place of employment); and

**Count Sixteen**: 15 U.S.C. § 1692f (Defendants' use of "unfair means" in collection of a debt).

(Compl., at ¶¶ 131-150)  From these claims, Alahmed seeks actual and statutory damages.

The nature of these claims will require (at least) adducing the following evidence at trial, all of which relates *only* to Alahmed's account: (1) the nature of the "false deceptive or misleading" debt collection practices of the Defendants; (2) a review of the Summary Screen, which will then have to be referenced against the exact amount of the debt proved to be owed to assess whether Defendants "falsely" represented the "character amount and/or status" of the debt; (3) a review of the "Summary Screen" and the "Personal Knowledge Affidavit" to determine whether those documents complied with § 1692e(11); (4) the identification of the "initial communication" sent to Alahmed, along with an analysis of whether that communication complied with the requirements of § 1692g(a), along with each of its five enumerated subsections; (5) a full evidentiary analysis of each of Defendants' "repeated" telephone contacts with Alahmed, his family members, and other unnamed third parties, including a subjective analysis of whether such conduct was "abusive or harassing" or constituted "unfair means" in collecting a debt, to assess the claimed violations of §§ 1692b, 1692c(a)(3), 1692c(b), 1692d, and 1692f; (6) an analysis of the statute of limitations and other affirmative defenses with respect to each instance of challenged conduct; and (7) an assessment of Alahmed's damages, including whether he has proved his actual damages with the required degree of reasonable certainty, along

with argument concerning the amount of statutory damages, if any, Alahmed should be awarded. Even more, all of these allegations will be contested by both sides through documentation and testifying witnesses (both fact and expert, through direct and cross examination).

Thus, none of Alahmed's claims are susceptible to generalized proof in a manner that could even possibly permit the resolution of these claims in the context of 166 other Plaintiffs, all of whom will also be required to make similar showings with respect to their divergent claims. Indeed, of the fifty-three claims pled, only two are pled on behalf of all of Plaintiffs, with the vast majority of counts (forty-three) pled by a single individual.

Furthermore, the inherently-individualized nature of this inquiry is in no way changed by the fact that a mere two FDCPA claims (out of a total of fifty-three counts), are asserted on behalf of all 167 Plaintiffs. Count One alleges "false, deceptive and misleading representations or means in connection with the alleged debt from the Plaintiffs" in violation of 15 U.S.C. § 1692e, which has been labeled by courts as the "catch all" provision of the FDCPA. *See, e.g., Donatelli v. Warmbrodt*, 2011 U.S. Dist. LEXIS 69207, at *29 (W.D. Pa. June 29, 2011). The specific nature of this conduct is not set forth by Plaintiffs; a clear indication that Plaintiffs prefer to keep this claim an undefined moving target throughout this action. However, regardless of their content, it is settled that claims under § 1692(e) "are inherently fact specific." *Black v. Asset Acceptance, LLC*, 2005 U.S. Dist. LEXIS 43264, at *9 (N.D. Ga. Dec. 9, 2005). They are not, therefore, subject to mass adjudication.

Count Eight, which is also pled on behalf of all 167 Plaintiffs, asserts that the Midland Defendants "failed to timely send the Plaintiffs a written notice that complied with the requirements of 15 U.S.C. § 1692g(a) and which informed them of their right to request verification of the debt." (Compl., at ¶¶ 115-118). Any claim under 15 U.S.C. § 1692g(a),

however, requires the court to determine whether the initial communication with the debtor was written or oral, identify the date of that communication, and then review a copy of the notice sent to the debtor to determine whether it complies with § 1692g(a), including each of the five enumerated subsections.  *Id.*  The accrual one the one-year statute of limitations will also vary for each Plaintiff and will have to be individually determined.  *Senftle v. Landau*, 390 F. Supp. 2d 463, 473 (D. Md. 2005) ("there is only one 'initial communication' with a debtor on a given debt under 1692g(a)" for purposes of assessing the accrual of the statute of limitations).  This entire process would have to be repeated 167 times in this action.  Hence, even though pled on behalf of all Plaintiffs, the resolution of each individual claim under Counts One and Count Eight is inextricably bound to the particular facts of each Plaintiff.  *See, e.g.*, *Strandlund v. Hawley*, 2007 U.S. Dist. LEXIS 27600, at *8 (D. Minn. Mar. 30, 2007) (finding a lack of commonality when liability was "bound to the unique details of each interaction").

Fundamentally, joinder is inappropriate when, as here, liability is "inextricably bound to the unique details of each interaction."  *Id.*  Allegations that Defendants "'[m]erely commit[ed] the same type of violation in the same way'" are not sufficient for the purposes of joinder.  *Raw Films, Ltd.*, 2011 U.S. Dist. LEXIS 114996, at *4 (citations omitted); *Hard Drive Prods. v. Doe*, 2011 U.S. Dist. LEXIS 94319, at *41 (N.D. Cal. Aug. 23, 2011) ("[P]ermitting joinder would force the Court to  . . . creat[e] scores of mini-trials involving different evidence and testimony.").  Indeed, under Plaintiffs' overly-broad interpretation of Rule 20(a), joinder would be proper with respect to any potential plaintiff's claims against the Midland Defendants simply by virtue of the fact that they too were the subject of debt collection activity by the Midland

Defendants, notwithstanding the untold factual differences with respect to each Plaintiff's claim. Such an argument is inconsistent with the requirements of Rule 20(a).[2]

**II.      Even if the requirements of Rule 20(a) were somehow satisfied, the Court should deny joinder based on reasons of economy and fairness.**

Even if Plaintiffs could assert that their claims arise out of the same "transaction or occurrence" with common questions of fact under Rule 20(a), joinder remains inappropriate due to the unfairness and inefficiency of litigating all such actions together.

**A.      The joint trial proposed by 167 different Plaintiffs inevitably will result in prejudice, confusion, and inefficiency.**

Any joint trial in this matter would involve a single jury presiding over the 837 claims of 167 Plaintiffs asserting varied factual grievances to be proved by different evidence. Where different evidence is involved, including different witnesses, so that a single jury could be easily confused, courts have repeatedly held that joinder is improper. *Wynn v. National Broadcasting Co.*, 234 F. Supp. 2d 1067 (C.D. Cal. 2002) (holding that joinder of the claims of fifty television writers, even assuming substantial common factual overlap, would create jury confusion, judicial inefficiency, and prejudice to the defendants); *Haleas*, 2010 U.S. Dist. LEXIS 31498, at *8-9 ("Without severance of each plaintiff's claim, a jury would be required to hear evidence and make factual determinations concerning thirteen separate events in one trial. This would likely be confusing to the jury, prejudicial to defendants, and undermine any other economies in litigation that may come from allowing joinder of plaintiffs."). Likewise, where a jury's hearing different evidence may prejudice the defendant and "deflect the jury's attention from the merits

---

[2] Indeed, under Plaintiffs' apparent conception of joinder, there literally would be no limit to the number of divergent factual allegations and/or plaintiffs that could potentially combine under Rule 20(a). Not only is this position contrary to the requirements of Rule 20(a), the endorsement of such a theory could create severe docket management issues for courts going forward, as detailed, *infra*, with respect to this action, with plaintiffs finding it to be to their advantage to proceed in this "mass action" form.

of each individual plaintiff's claim," those claims should be severed.  *Lover*, 248 F.R.D. at 323 (quoting *Klimaski v. Parexel Int'l*, 2005 WL 857350, at *2 (E.D. Pa. Jun. 24. 2005)); *see also Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989) (granting separate trials following initial joinder due to potential prejudice in the minds of the jury associated with the admissibility of certain evidence), *aff'd on other grounds*, 899 F.2d 183 (2d Cir. 1990).

The Court has previously considered such concerns in the analogous context of Fed. R. Civ. P. 23.  In *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742 (4th Cir. 1998), the Fourth Circuit affirmed the Court's decision to decertify an employment-discrimination class action.  *Id.* at 753.  The plaintiffs accused Circuit City of engaging in pattern or practice of discrimination that resulted in adverse employment treatment of class members.  *Id.* at 749.  The plaintiffs indicated that evidence on forty-three class members would be presented at trial to show the pattern and practice, and that approximately 200 persons would be included in the class.  *Id.* at 754.  To promote manageability of the trial, plaintiffs proposed a bifurcated proceeding where class-wide issues, including punitive damages, would be decided first in a class action trial, and individual damages issues would then be decided in a second set of trials, one for each class member.  *Id.*

In denying class certification, the district court determined that this trial procedure would be unfair and inefficient.  *Id.* at 754.  In particular, the district court focused on the overlap in evidence in the two phases, which could cause prejudice to the defendant and undercut any alleged efficiency savings.  *Id.*  The Fourth Circuit then affirmed the decertification decision on the basis that the district court had legitimate concerns that the class would be "unwieldy and unfair to Circuit City."  *Id.* at 758.

In this action, there can be little doubt of the substantial risk of confusion and unfair prejudice if a single jury is allowed to hear all 167 Plaintiffs' claims in a single proceeding. For instance, evidence regarding Defendants' allegedly harassing telephone conduct is irrelevant to the evaluation of the claims of the Plaintiffs who have made no such allegation. Yet, the jury would be exposed to all such testimony. Similarly, evidence regarding the TCPA claims pled by nine Plaintiffs has no bearing on the FDCPA claims pled by the other one hundred fifty-eight Plaintiffs. And, even among those Plaintiffs asserting the same causes of action, the specific facts regarding Defendants' collection of one Plaintiff's debt have no relevance to the proof of any claims with respect to the entirely unrelated debt of a different Plaintiff. Such circumstances raise the very real potential for bias and unfair prejudice to Defendants, and such a trial should not be allowed. *See, e.g.*, *Wynn*, 234 F. Supp. 2d at 1067 (denying joinder of fifty plaintiffs due to inevitable prejudice to the defendants); *Ismail*, 706 F. Supp. at 251 (granting separate trials due to potential prejudice in the minds of the jury associated with the admissibility of certain evidence).

Also, the potential for jury confusion when a jury is forced to assess evidence and damages with respect to 167 Plaintiffs and 837 claims is obvious and cannot be undone.[3] *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 517-18 (N.D. Il. 2000) ("A single trial would require the jury to keep separate each plaintiff's individualized claim . . . presenting the jury with the 'hopeless task' of trying to discern who did and said what to whom and for what reason."). In

---

[3] Such prejudice could also not be cured by any instruction from the court, as it is well established that such an instruction is insufficient where the testimony "is likely to make a sufficiently strong impression on the jury that it will be unable to disregard it." *United States v. Sands*, 899 F.2d 912, 915 (10th Cir. 1990); *see also United States v. Murray*, 784 F.2d 188, 189 (6th Cir. 1986) (a jury instruction under such circumstances is "very close to an instruction to unring a bell"); *Hassoun*, 477 F. Supp. 2d at 1229 ("A jury charge directing that any defenses posed with regard to the falsity counts not be considered when deciding upon the material support and conspiracy counts will not ameliorate the problem.").

contrast, no obvious prejudice would result to Plaintiffs by simply requiring them to litigate their claims in individual trials. Because of the inherent confusion that the jury would endure in distilling commingled evidence of 167 Plaintiffs, and the prejudice that could result to Defendants in jointly defending such claims, the Court should grant Defendants' Motion to Sever Plaintiffs' claims into separate civil actions.

**B. Logistical concerns militate strongly in favor of severance.**

There is no question that if the varying and individualized claims of the 167 plaintiffs in this case are permitted to proceed in a single action the result will be an unwieldy, exceedingly-lengthy, confusing, and prejudicial pre-trial and trial process.

There are many unsettling logistical issues that will exist in even the *pre-trial* stage of this action, which include, *inter alia*: (1) whether 167 motions for summary judgment will be permitted for both sides and how they can be timely resolved to realize the gains of pre-trial disposition; (2) whether 167 settlement conferences will be scheduled, and, if so, whether a single magistrate judge will be burdened with all such conferences; (3) when expert disclosures will be exchanged, and whether expert reports will be separated by Plaintiff; (4) the timing and coordination in responding to 167 sets of requests for production, 167 sets of interrogatories, and 167 sets of requests for admission in a manner that will permit the timely deposition of each Plaintiff; (5) how potentially dozens of discovery and other critical pre-trial motions can be addressed in a timely manner without overwhelming the Court's docket; (6) how compliance with numerous subpoena *duces tecum* can be enforced within the applicable deadlines; and (7) how 167 separate depositions of individual Plaintiffs, as well as the depositions of an untold number of third party witnesses, can be taken prior to the close of discovery in a manner consistent with the preferred trial schedule within the Eastern District of Virginia. None of these issues have ready answers except for severance.

Furthermore, there are a host of unanswered questions as to how such a *trial* would, logistically work, including but certainly not limited to: (1) in what order Plaintiffs will be tried and why; (2) how such a lengthy trial can be completed in a reasonable time to accommodate the many other litigants needing the Court's attention; (3) whether 167 separate jury instructions or jury verdict forms would be used; (4) to what extent evidence introduced for one Plaintiff can be used with respect to another Plaintiff; (5) when and how expert testimony will be introduced and made clear to which Plaintiff it applies; and (6) how the jurors can meaningfully recall testimony relative to 167 individual Plaintiffs that was given weeks or months prior to their deliberations.

In light of the many logistical impediments to an efficient disposition of a joint action, the cases should be severed. *See, e.g.*, *Acevedo*, 600 F.3d at 522 ("However, assuming *arguendo* that Allsup's company-wide policies allow Appellants to satisfy Rule 20's transaction test, denying joinder in this case would still not be an abuse of discretion. In this case . . . the plaintiffs work or have worked across a network of more than 300 stores, each with its own manager responsible for implementing Allsup's policies. The district court was within its wide discretion to conclude that trying these claims together would be too challenging logistically, given the divergent working conditions at each store and the different defenses applicable to each plaintiff's claims."); *Hard Drive Prods.*, 2011 U.S. Dist. LEXIS 94319, at *41 ("[P]ermitting joinder in this case would undermine Rule 20(a)'s purpose of promoting judicial economy and trial convenience because it would result in a logistically unmanageable case."); *Berthelot v. Am. Postal Workers Union, Local 185*, 2010 U.S. Dist. LEXIS 118788, at *27 (S.D. Tex. Nov. 8, 2010) ("Even if Plaintiff could satisfy the two-pronged test under Rule 20(a)(1), the Court concludes that joinder would not be warranted because judicial economy would not be served by adding those employees listed or discussed in Plaintiff's Motion (as well as those as yet unnamed

plaintiffs who continue to contact Plaintiff's counsel) in order to adjudicate these highly individualized claims on any kind of joint basis."); *Lowery*, 158 F.3d at 753-58 (affirming the trial court's finding that a single proceeding would be "cumbersome and inefficient," and that the benefits of class certification -- accelerated and efficient disposition -- would not necessarily follow in the case, but "unfairness to Circuit City would be a likely result.").

Thus, this Court should sever each Plaintiff's claim and dismiss all but a single Plaintiff's claims without prejudice.  *See e.g.*, *Ravin*, 2007 U.S. Dist. LEXIS 33, at *18 ("[T]he Court concludes that these Plaintiffs are improperly joined in this single action and that this action may proceed with only one Plaintiff.  All other Plaintiffs will be dismissed from this action without prejudice to refile their claims as individual cases.").

## III.   Severance of the claims into 167 individual actions will not prevent the efficient adjudication of Plaintiffs' claims.

The severance of Plaintiffs' claims will not result in unduly delayed adjudication. Defendants are more than willing to pursue an ambitious discovery plan with Plaintiffs' counsel, which would facilitate the resolution of all individual claims in an expedient manner. Defendants are committed to actively working with both the Court and Plaintiffs to ensure the timely resolution of their claims, notwithstanding the necessity of severance.

### CONCLUSION

WHEREFORE, Defendants, Encore Capital Group, Inc., Midland Funding, LLC and Midland Credit Management, Inc., respectfully request that the Court: (1) grant their Motion to Sever, ordering separate trials for each of the named Plaintiffs and dismissing without prejudice all but one of the named Plaintiffs; and (2) grant Defendants any such further relief that the Court deems appropriate.

**ENCORE CAPITAL GROUP, INC.,**
**MIDLAND FUNDING, LLC and**
**MIDLAND CREDIT MANAGEMENT, INC.**


By:    /s/ John C. Lynch
                               Of Counsel

John C. Lynch (VSB No. 39267)
Jason E. Manning (VSB No. 74306)
Counsel for Defendants
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:  (757) 687-1504
E-mail: john.lynch@troutmansanders.com
E-mail: jason.manning@troutmansanders.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of December 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

**Counsel for Plaintiffs**
Leonard A. Bennett, Esq.
Susan M. Rotkis, Esq.
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23616
E-mail: lenbennett@cox.net
E-mail: srotkis@clalegal.com

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
E-mail: matt@clalegal.com

Dale W. Pittman, Esq.
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb St.
Petersburg, VA 23803
E-mail: dale@pittmanlawoffice.com

      /s/ John C. Lynch
John C. Lynch (VSB No. 39267)
Counsel for Defendants
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone:  (757) 687-7765
Facsimile:  (757) 687-1504
E-mail: john.lynch@troutmansanders.com

427379v1