**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

JACQUELINE BOONE, *et al.*,      :
      :
      Plaintiffs,      :
      :
v.      :      Civil Action No. 4:11cv164
      :
ENCORE CAPITAL GROUP, INC., *et al.*,      :
      :
      Defendants.      :

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO TRANSFER VENUE AND TO CONSOLIDATE**

COME NOW the Plaintiffs, by counsel, and as for their memorandum in support of their

motion to transfer venue to the Richmond Division of the Eastern District of Virginia and to

consolidate this case with *Adkins, et al. v. Encore Capital Group, Inc., et al.*, Civil No. 3:11-cv-

334 (or "*Adkins*"), they state as follows:

**BACKGROUND OF ENCORE CAPITAL LITIGATION**

**A.**    **National Litigation**

Encore Capital Group, Inc. and its operating subsidiaries, Midland Capital Management,

Inc. and Midland Funding, LLC (collectively "Defendants") have been the subject of multiple

class claims, investigations and prosecutions by state Attorneys General and the Federal Trade

Commission and in 2011 suffered one of the largest verdicts sustained in a federal court against a

debt buyer.

In the class action *Midland Funding, LLC v. Brent*, Civil No. 3:08-cv-1434, the United

States District Court for the Northern District of Ohio entered summary judgment upon many of

the same claims alleged in this case – Defendants were accused of executing collection affidavits

that fraudulently implied actual or personal knowledge of the debts and submitting them to state courts.   It was discovered that Defendants used an assembly-line process to manufacture affidavits, which process the Ohio federal court ruled on summary judgment was unlawful, and the court enjoined further use of such processes.   That case later settled, though in that process thirty-eight (38) Attorneys General and the FTC voiced criticism of the Defendants and their collection conduct.   Defendants then claimed to have changed their procedures to comply with the Ohio order.   Despite such clam, at least four (4) states have commenced investigations and prosecutions of Defendants' misconduct, including Minnesota, New York, Texas, and North Carolina.

The core issue for Defendants is their ambition to automate the debt buying and collection process far beyond what basic contract principles and state law permit.   Defendants buy only an electronic dataset without underlying account histories, consumer dispute documents or even information as basic as how much of a balance is claimed as principal versus interest, late charges or ancillary fees.   In some instances, the result is significant injury to a consumer through such collection and credit reporting demands.   For example, earlier this year, present Plaintiffs' counsel tried such a case to a $723,000 jury verdict against Midland Credit Management in the Northern District of Alabama ($100,000 actual damages, $623,000 punitive damages). *Brim v. Midland Credit Management, Inc.*, Civil No. 5:10-cv-369.

**B. Virginia Litigation**

Following the end of the Ohio litigation, Plaintiffs' counsel continued their representation of numerous consumers who had already faced Defendants' post-settlement continuation of their questionable collection process.   The first such case filed was *James v. Encore Capital Group, Inc., et al.*, Civil No. 3:11-cv-221 (E.D. Va.). This case is set before Senior Judge Payne.   The

Amended Complaint in the case was filed after deposition and documentary discovery and the current collection procedures are detailed at length therein. (*James*, Dkt. No. 43). In James, the court has denied Defendants' motion to dismiss the same FDCPA claim alleged in this case and the related abuse of process claim. Defendants did not even attempt to challenge the Federal Racketeer Influenced Corrupt Organizations claim. That case is now set for trial on May 7, 2012, with various discovery motions pending against Defendants for hearing January 23, 2012.

After *James*, present Plaintiffs' counsel filed *Adkins v. Encore Capital Group, et al.*, a case joining similar claims of one hundred (100) consumers. *Adkins v. Encore Capital Group, Inc. et al.*, Civil No. 3:11-cv-334. The claims and issues in *Adkins* are nearly identical to those in the case *sub judic*e. In *Adkins*, Defendants, represented by the same lawyers, filed a Motion to Sever with supporting brief that was nearly word for word identical to the one filed in this case.

There are also a large number of cases pending in Virginia state court. Defendants have continued to sue Virginia consumers during the pendency of *James* and *Adkins* and – remarkably – have not reformed the procedures criticized in those cases. Various General District Court cases brought by Midland have resulted in dismissal of the collection cases and judgment in favor of the consumer on the counterclaim. Midland has appealed several of these and there are now three (3) cases pending in state Circuit courts. There remain at least fourteen (14) such cases pending in state General District courts, and several more counterclaims against Midland that have yet to be filed.

## C.     Richmond Division Case Postures

In *Adkins*, a case with one hundred (100) plaintiffs, after Defendants neglected to object to Magistrate Judge jurisdiction (in accordance with Judge Spencer's pretrial order), the case was assigned for trial to Magistrate Judge Dohnal. Then, Defendants moved to reassign the case and

also moved to sever.  The *Adkins* Plaintiffs opposed (represented by present counsel).  They asked that the case be set before the Magistrate Judge for case management as a means to reduce the substantial burden on the District Court.  Judge Spencer so ordered and the *Adkins* case is now set before Judge Dohnal by order stating: "this case is hereby REFERRED to U.S. Magistrate Judge Dennis W. Dohnal for pretrial case management, including the development of a consolidate discovery plan and resolution of the Defendants' pending, non-dispositive Motion to Sever." (*Adkins*, Dkt. No. 31)

In *James*, Judge Payne ordered the parties to mediation before Magistrate Judge Lauck. An initial settlement conference occurred on November 2, 2011 and all counsel began a settlement process that was to expressly include the claims now pending before the Court.  Then, while completing Judge Lauck's instructions to provide a breakdown on all consumers then represented by counsel – including all consumers included in this case (*Boone*) – the present case was filed in Newport News Circuit Court in order to preserve claims against a statute of limitations bar.  Defendants were aware of such filing.  And yet, before the state case had even been served (service was not attempted), they unnecessarily removed the case to this Court, likely in order to add litigation work and resource demands on the eve of the *James/Adkins* settlement effort as a lever in mediation.  However, the removal of this case had the opposite effect and, as a result, Judge Lauck terminated the Richmond global mediation process on January 3, 2012.

This District now has three separate actions pending before it, brought on behalf of individuals who were targeted by the Defendants in debt collection lawsuits in state courts across the Commonwealth of Virginia. In attempting to collect these debts, Defendants systematically and intentionally violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (or

"FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (or "TCPA"). These cases have substantial factual and legal overlap, and thus the instant case should be transferred to the Richmond Division and consolidated with the first-filed *Adkins* case into a single action. Particularly given that all of the *Adkins* cases are pending before Judge Dohnal (and his soon to be successor) for case management and given that Judge Payne has already ruled on the core issues in *James* related to the uniform claim pursued by each Plaintiff for the Defendants' violations of 15 U.S.C. § 1692e(11), this would promote the interests of judicial economy, the management of this Court's docket, and would create efficiencies in progressing to a global determination of the issues involved.

## ARGUMENT

### A.      This case should be transferred to the Richmond Division of the Eastern District of Virginia.

Transfer of venue for judicial economy is contemplated by Section 1404, which provides that, upon motion by a party, a court may, in its discretion, and "[f]or the convenience of parties and witnesses, in the interest of justice, [...] transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy, and money" and "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). When considering a motion to transfer venue, the court must determine 1) whether the suit could have originally been brought in the forum to which transfer is sought, and 2) whether the balance of convenience to the parties and consideration of the interest of justice justify transfer to that forum. *See Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 566 (E.D. Va. 2005). The decision to transfer an action under this statute is committed to the sound discretion of the district court. *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F.

Supp. 2d 660, 667 (E.D. Va. 2010). *See also One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F.Supp.2d 824, 828 (E.D.Va.2004). In order to establish that an action could have been brought in the transferee forum, the party seeking transfer must show that both venue and personal jurisdiction is proper in that district. *See e.g.*, *L.G. Elecs. Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 812 (E.D. Va. 2001).

> **1.      *This case may be transferred to Richmond Division because both venue and personal jurisdiction are proper.***

The Local Rules of this District provide that "[t]he venue rules stated in 28 U.S.C. § 1391 et seq. also shall apply to determine the proper division in which an action shall be filed. For the purpose of determining the proper division in which to lay venue, the venue rules stated in 28 U.S.C. § 1391 et seq. shall be construed as if the terms 'judicial district' and 'district' were replaced with the term 'division.'"  Local Rule 3(C).  Pursuant to 28 U.S.C. § 1391(b)(1), a federal civil action may be brought in a judicial district where any defendant resides, if all defendants reside in the same state. Additionally, under 28 U.S.C. § 1391(c), "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," and that personal jurisdiction is not tied to the location of a corporation's home office. *See, e.g., Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414–15, (1984) (requiring continuous and systematic contacts, not physical plant, for general personal jurisdiction over corporations); *Byerson v. Equifax Info. Services, LLC*, 467 F. Supp. 2d 627, 632 (E.D. Va. 2006).

Personal jurisdiction may be exercised over a defendant who has established continuous and systematic contacts with the forum. Venue is clearly proper in the Richmond Division. All Defendants are deemed to reside there because they are subject to personal jurisdiction in that district. Personal jurisdiction over the Defendants exists because, although they are not Virginia

companies, they regularly conduct business in the Richmond Division by pursuing collection actions against consumers living within the counties of the Richmond Division. Furthermore, many of the Plaintiffs were sued by the Defendants in state courts located in the Richmond Division, and were harassed by the Defendants at locations within the Richmond Division. This activity establishes the minimum contacts necessary to give the Court personal jurisdiction. *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945) (holding that the exercise by foreign corporation of privilege of conducting activities within a state may give rise to obligations, and, so far as those obligations arise out of or are connected with activities within the state, a procedure requiring corporation to respond to a suit brought to enforce such obligations does not offend due process of law clause). Therefore, this case could have originally been brought in the Richmond Division and transfer is proper.

> **2.      *Transferring the case to the Richmond Division would be more convenient for both parties as well as for the witnesses.***

Convenience to the parties typically requires courts to consider factors such as the "ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process." *Heinz,* 750 F. Supp. 2d at 668 (internal citations omitted). The convenience of the witnesses is "perhaps the most important factor" in determining whether a transfer of venue should be granted. *Cronos Containers Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000). Under this standard, transferring this case to the Richmond Division would be much more convenient to all parties involved in these cases, especially as to the witnesses. There is already litigation occurring in the Richmond Division that involves substantially the same subject matter, evidence, and witnesses. It is a burden on witnesses to travel, procure time off of work, and attend depositions, trial, or any other event that would require their attendance. However, it is a much heavier burden to be required to do that for more than once when duplicity

could easily be avoided at no extra burden to the parties themselves. In fact, the cost imposed upon both the witnesses and the parties is actually reduced if the case is consolidated into the *Adkins* case. Additionally, the same concept applies to the Defendants. It is much more convenient for them to defend one case rather than two separate cases. Defendants' headquarters are located in Minnesota, and by consolidating this case with *Adkins*, it eases some of the burden associated with defending two separate cases in different locations. Furthermore, the parties are already litigating a nearly identical case (*Adkins)* within the Richmond Division, which the Defendants have never alleged to be an inconvenient venue. Indeed, they have litigated the *James* matter for nine months in that courthouse without ever alleging that it was an inconvenient forum. Defendants also regularly engage in collection activities in the Commonwealth of Virginia, and a large percentage of their state court lawsuits are filed in state courts located within the Richmond Division. Much of the evidence related to this case will therefore be in the Richmond Division as well. As a result, transferring this case and consolidating it with the *Adkins* case is more convenient to all involved, and doing so would prejudice neither party.

### 3. *Transferring the case to the Richmond Division is in the interests of justice.*

A significant factor in considering the interests of justice is "avoiding duplicative litigation in courts," and the Court "may appropriately consider the 'conservation of judicial resources and comprehensive disposition of litigation.'" *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000). In fact, the Supreme Court has held that where there are substantially similar actions pending simultaneously in different federal courts, the general principle is to avoid duplicative litigation as between the courts. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). The Supreme Court has

repeatedly stressed this importance of judicial conservation. *See e.g.*, *id.* ("These principles rest on considerations of '(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)). Thus, in ruling on a motion to transfer venue, the Court may consider such conservation of judicial resources and the potential to avoid duplicative litigation. *See Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. at 183; *Cronos Containers, Ltd.*, 121 F. Supp. 2d at 466.

The interest of justice further requires a consideration of public interest factors aimed at systemic integrity and fairness. *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 695 (E.D. Va. 2007) (internal quotation omitted). Systemic integrity requires judicial economy and the avoidance of inconsistent judgments. *Id.* In evaluating the fairness of transferring venues, courts should consider "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* In addition, the Court should exercise its power to transfer a case in order to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *Original Creatine*, 387 F. Supp. 2d at 566.

Because this case involves virtually the same facts and issues presented in the Adkins case, it becomes duplicative to litigate these cases in two different federal jurisdictions. Transferring the instant case to the Richmond Division is therefore required by systemic integrity. The Richmond Division currently has a virtually identical case, *Adkins*, pending before the court. In fact, both complaints contain ten counts that are the same.  Importantly - every Plaintiff in both *Adkins* and this matter has alleged that the Defendant violated the provisions of

15 U.S.C. §1692e(11).  Judge Payne has now ruled on the only issue in dispute – denying the Defendants' motion to dismiss and finding that the affidavits and other screen printouts filed by the Defendants in their collection cases do not satisfy the FDCPA's exception for "formal legal pleadings."[1]  Partial summary judgment for each Plaintiff in both *Adkins* and *Boone* on this very straightforward claim is now appropriate, and those Plaintiffs intend to bring that motion shortly. By transferring this case to the Richmond division, the same governing laws will apply to both this one and the substantially related *Adkins* case. Additionally, the Richmond Division Court has already invested significant time into *Adkins* and is intricately familiar with the facts and claims at the heart of both cases. Magistrate Judge Lauck has been involved in mediating the *Adkins* case, and both Magistrate Judge Lauck and Judge Spencer are already familiar with the facts and issues similarly presented in this case. Just yesterday, on January 18, 2012, Magistrate Judge Dohnal conducted a discovery planning conference in the *Adkins* matter.  As a result, the parties have now agreed on a discovery plan that would conclude discovery by August 1, 2012, with the parties to provide status reports to the Court every two weeks. Furthermore, the Plaintiffs in *Adkins* will be filing a Motion for Partial Summary Judgment within days that addresses many of the same issues involved with this case for which there is no factual dispute. Therefore, continuing to litigate the two cases in different courts will generate the very real risk of inconsistent adjudication, and certainly would not serve the interests of judicial economy.

Additionally, transferring the instant case to the Richmond Division would be a substantial relief to both parties and the court system as a whole. Once the case is transferred to Richmond Division, it can be consolidated with the *Adkins* case and would greatly reduce docket congestion and the burden of jury duty in this district. Furthermore, a transfer would save the

---

[1] *Gilbert James v. Encore Capital Group*, 3:11-cv-221, Docket No. 116 (Jan 4, 2011).

court time, energy and money, as well as reduce both parties' expenses in litigation. These time and resource considerations are especially important in a District that prides itself on its efficient "Rocket Docket." Systemic integrity and fairness therefore necessitate a transfer of the instant case to the Richmond Division.

**B.      This case should be consolidated with the *Adkins* case.**

Fed. R. Civ. P. 42(a)(2) provides that a court may order consolidation of cases where they involve a common question of law or fact. In addition to consolidation, it is within the court's discretion to join for a hearing or trial any or all the matters at issue or to issue any other order to avoid unnecessary cost or delay. Fed. R. Civ. P. 42(a)(1)&(3). The court has "broad discretion" with regard to cases pending in the same District and should make this determination while weighing the efficiencies created by consolidation against any inconvenience, delay, or expense that might result. *A/S J. Ludwig Mowinckles Rederi v. Tidewater Construction Co.*, 559 F.2d 928, 933 (4th Cir. 1977); *Stein, Hall & Co. v. Scindia Steam Navigation Co.*, 264 F. Supp. 499, 501 (S.D.N.Y. 1967); *see generally,* Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 2383 at 439. Specifically, when considering a motion to consolidate, the Court should weigh the risk of inconsistent adjudications of common factual and legal issues, the burden on the parties, witnesses and judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single trial versus multiple-trial alternatives against the specific risks of prejudice and possible confusion which might result from consolidation. *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982).

In this case, all of the equities weigh in favor of consolidation.  The two cases are brought on virtually identical fact patterns. Both complaints allege that Defendants purchased portfolios

of charged-off debt and then attempted to collect the purchased debts from consumers across Virginia. In an attempt to collect this debt, Defendants filed lawsuits in state courts across Virginia and in doing so intentionally and systematically violated the FDCPA. This fact pattern, virtually identical in both complaints, led to both sets of Plaintiff filing ten counts against the Defendants that are essentially indistinguishable, specifically:

1.      That the Defendants used false, deceptive and misleading representations or means in connection with the collection of the alleged debt from the Plaintiffs, in violation of 15 U.S.C. §1692e;

2.      That the Defendants falsely represented the character, amount and/or legal status of the alleged debts in the "Summary Screens" mailed to the Plaintiffs, in violation of 15 U.S.C. §1692e(2);

3.      That the Defendants used false or deceptive means in an attempt to collect a debt by their actions, including but not limited to, attaching generic cardholder agreements or other account documents to the "Warrant in Debt" and then claiming that these were the actual agreements or account documents for that specific account, in violation of 15 U.S.C. §1692e(10);

4.      That the Defendants used false or deceptive means in an attempt to collect a debt by their actions, including but not limited to, attaching invoices or other documents to the Personal Knowledge Affidavit. This created the misperception that the affiant had seen and reviewed the documents attached to the invoice when in fact the affiant had not, in violation of 15 U.S.C. §1692e(10);

5.      That the Defendants sent a communication to the Plaintiffs that bore the legend "Summary Screen," and which purported to contain information indicating the details of the account but did not contain the language required by 15 U.S.C. §1692e(11);

6.      That the Defendants sent a communication to the Plaintiffs claiming to be an affidavit of a Midland employee. These affidavits (or "Personal Knowledge Affidavit") did not contain the language required by 15 U.S.C. §1692e(11);

7.      That the Defendants sent a communication to the Plaintiffs that bore the legend "MCM Statement," and which purported to contain information indicating the details of the account but did not contain the language required by 15 U.S.C. §1692e(11);

8.      That the Defendants failed to timely send the Plaintiffs a written notice that complied with the requirements of 15 U.S.C. §1692g(a) and which informed them of their right to request verification of the debt;

9.      That the Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(B) by their actions, which include but are not limited to making one or more calls using an automatic telephone dialing system or artificial or pre-recorded voice to Plaintiffs' telephone number assigned to a cellular telephone service; and

10.     The Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(B) by their actions, which include but are not limited to initiating telephone calls to a residential telephone line using an artificial or prerecorded voice to deliver a message without the Plaintiffs' express consent.

Although both complaints include additional facts and counts brought on behalf of individual Plaintiffs, even those facts are substantially similar. Many involve the Defendants placing calls to third parties in violation of the FDCPA, placing several calls to a Plaintiff per day in an attempt to harass him/her, or placing calls to a Plaintiff at work after the Plaintiff informed the Defendant that he/she was not allowed to receive personal calls at work. All of these individual claims share many similarities. If these cases proceed on separate tracks, given

the substantial factual and legal overlap, each set of Plaintiffs would be potential pattern and practice witnesses at the trial of the other case.  Indeed, each of these separate trials would go forward with many of the same witnesses on both sides, with the Defendant flying most of its witnesses into Virginia from Minnesota and California. The significant time and costs on both sides involved in pre-trial disclosures, trial preparation, and motions practice that will occur shortly in *Boone* would be replicated unnecessarily in the *Adkins* case, at the expense of this Court's docket and judicial resources.

## CONCLUSION

For these reasons, and in furtherance of the interests of judicial economy and the efficiencies created thereby, Plaintiff respectfully moves that this Court transfer the case to the Richmond Division and thereafter consolidate the two pending actions.

Respectfully submitted,
PLAINTIFFS BOONE, et al.


_____/s/_____
Matthew J. Erausquin, VSB#65434
CONSUMER LITIGATION ASSOCIATES, PC
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Tel:    703-273-7770
Fax:    888-892-3512
matt@clalegal.com

Leonard A. Bennett, VSB#37523
Susan M. Rotkis
CONSUMER LITIGATION ASSOCIATES, PC
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Tel:    757-930-3660
Fax:    757-930-3662
lenbennett@cox.net
srotkis@clalegal.com

Dale W. Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212
Tel:    804-861-6000
Fax:    804-861-3368
dale@pittmanlawoffice.com

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of January, 2012 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:

David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
804-697-5410
804-698-5118 (fax)
david.anthony@troutmansanders.com

Jason Emmanuel Manning
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462
(757) 687-7764
(757) 687-1524 (fax)
jason.manning@troutmansanders.com

John C. Lynch
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462
757-687-7765
757-687-1504 (fax)
john.lynch@troutmansanders.com

Timothy James St. George
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
804-697-1254
tim.stgeorge@troutmansanders.com

*Counsel for Defendants*

_____/s/_____
Matthew J. Erasquin, VSB#65434
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Tel:    703-273-7770
Fax:    888-892-3512
matt@clalegal.com